## Robert Woodward, Appellee, v. Springfield Coal Mining Company, Appellant.

VERDICTS—*when set aside as against the evidence.* A verdict clearly and manifestly against the weight of the evidence will be set aside on review.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A.. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1910. Reversed and remanded. Opinion filed May 26, 1911.

CONKLING & IRWIN, for appellant.

MONROE & MONROE, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case to recover for personal injuries alleged to have been received by the plaintiff by reason of the violation by appellant of section 18 of the Mining Act. A judgment in favor of the plaintiff for the sum of $1,500 was rendered upon the verdict of a jury.

The declaration charges that the plaintiff was in the employ of appellant in its coal mine as a mule driver; that there was in said mine a switch connected with the main track by an automatic spring attached to a portion of the main track called the latch rail; that when cars passed through the switch and onto the main track, such spring would force the latch rail back and connect it with the rail of the main track, leaving the rails of the main track in such position as to allow cars to pass safely over the same; that on the day the plaintiff was injured, such automatic spring was and had been for a long time prior thereto, in a defective and unsafe condition; that the space between said spring and the latch rail was and had been for a long

time prior thereto, clogged with dirt, so that it would not throw the latch rail and connect it with the line of the main track, whereby the latch rail was left standing open and unconnected with said main track; by reason whereof a trip of cars upon which the plaintiff was riding, ran off the main track into the open switch and upon the ground and ties, whereby the plaintiff's foot was caught between the bumper of the front car and the rails and crushed. The declaration further avers that a dangerous condition was thus created; the failure of the mine examiner to inspect this place to discover such dangerous condition and report the same to the mine manager, and further that the plaintiff was allowed to enter the mine to work therein not under the directions of the mine manager before the dangerous conditions had been made safe.

The evidence shows that the plaintiff was injured by the derailing of a trip of three loaded coal cars, while he was riding upon the same at or near a switch latch in one of the entries in the defendant's mine; that the latch rail was held in place as a part of the main track by means of a spring placed on the side of the track rails and fastened to ties outside of the track at two points, leaving the spring about two feet long; that attached to the spring were wires which passed under the rails of the track and were fastened to a plate attached to the latch rail; that the end of the latch rail worked on a piece of plate iron; that when a car passed over the switch track going east, the wheels opened the latch and after the wheels passed through the latch the spring automatically forced the latch rail back into place as a part of the main track, and that springs of like character were in general use in all coal mines in that district.

The plaintiff testified that he had worked as a driver in this entry for two weeks prior to the accident; that during that time he had noticed dirt at the latch as high as the top of the rails between the rails of the track; that between the north rail of the track and

the north rib of the entry the dirt was as high as the rail at the rail and slanted up to the rib; that he had no trouble with the latch at any time; that on the morning of the accident he removed a little dust from it, and that thereafter it worked all right until the accident; that he did not know the construction of the latch; that he had never seen the spring because it was covered with dirt and dust; that there was no record of any dangerous condition at this place, upon the board, when he went to work, and that he was given no directions by the mine examiner about his work that day.

The mine manager, the fellow-driver of the plaintiff, the mine examiner, the driver boss, and a timberman, who were called by the defendant, each testified in direct and positive contradiction of the plaintiff's testimony as to the condition of the track, rails, latch and spring. The mine examiner testified further that he passed the place in question twice the night before the accident; that the latch rail was at that time up against the other rail in proper condition; that there were no dangerous conditions there to mark or report, and that he therefore made no mark or report. The fellow-driver of the plaintiff testified that the latch was in good condition prior to the accident; that he and the plaintiff each had passed over and through the same about twenty times that day and that it worked all right all the time; that on the trip before the accident he for the first time noticed a small piece of coal in between the latch and the track rail. The evidence further shows that after the accident the latch rail was found to be held open about a quarter of an inch by coal that had been mashed in it, and that after the same was removed the latch worked properly without repairing.

The material issue under the pleadings was whether or not the specific dangerous condition alleged to have existed was in fact present at the time of the accident. While other dangerous conditions may have existed

which should have been discovered by the defendant, the evidence, together with all reasonable and legitimate inferences to be drawn therefrom, wholly fails to prove that the latch rail itself was either broken or defective, or that it had been for a long time prior to the accident clogged and obstructed with dust or coal as charged in the declaration. The testimony of the plaintiff himself negatives both of such propositions.

We are of opinion that the verdict of the jury was clearly against the weight of the evidence, and it becomes our duty to reverse the judgment rendered thereon and remand the cause for another trial. We find no error in the rulings upon instructions.

*Reversed and remanded.*